**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MOHAMMED FNEICH**, *et al.*, |
| Plaintiffs, |
| v. |
| **ISLAMIC REPUBIC OF IRAN**, *et al.*, |
| Defendants. |

Case No. 24-cv-1843 (CRC)

## MEMORANDUM OPINION

The 27 plaintiffs in this case include former employees of the United States government who were injured during terrorist attacks perpetrated at the U.S. Embassy in Beirut, Lebanon, the legal representative of an employee victim's estate, and family members of employee victims. Together, Plaintiffs bring claims against the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS"), alleging that Iran was and is a state sponsor of terrorism that provided material support to Hezbollah, the terrorist organization responsible for the attack. Iran and MOIS have failed to appear, so Plaintiffs now (1) move for default judgment as to liability, and (2) ask the Court to appoint special masters to assess damages. The Court will grant Plaintiffs' motions.

**I.   Background**

Given the default posture of these proceedings, the Court draws the following facts from the allegations in the complaint, Plaintiffs' supporting affidavits, and the record of related cases arising from these attacks and involving Defendants, of which the Court takes judicial notice.

On April 18, 1983, "an unidentified male driver crashed a vehicle laden with hundreds of pounds of explosives into the main entrance of the U.S. Embassy in Beirut[,]" killing 63 people and injuring more than 100 others. Second Am. Compl. ("SAC") ¶¶ 37–38; see also Est. of Doe

v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 7–10 (D.D.C. 2011).  Louise Briatore Rassi, a former U.S. government employee and plaintiff in this case, suffered serious injuries during the attack.  Aff. of Louise Briatore Rassi (ECF No. 64-5) ¶¶ 3–6.

Because the Embassy building was severely damaged, its operations were temporarily transferred to another building in Beirut, known as the "Embassy Annex."  SAC ¶ 43.  The Embassy Annex "was believed to be [in] a safer part of the city."  Est. of Doe, 808 F. Supp. 2d at 7.  But on September 20, 1984, another vehicle loaded with explosives detonated at the Embassy Annex, killing at least eleven people and injuring dozens more.  See SAC ¶ 44; see also Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d 128, 132 (D.D.C. 2001).  Plaintiffs Elie Salemeh, Mohammed Fneich, and Youssef Fneich—represented by his estate in this case—were among those injured in the September 1984 attack.  See Aff. of Pl. Elie Salameh (ECF No. 64-5) ¶¶ 3–6; Aff. of Mohamad Youssef Fneich (ECF No. 64-5) ¶¶ 5–9; Aff. of Mohamad Youssef Fneich for the Est. of Youssef Fneich (ECF No. 64-5) ¶¶ 4–6.  These attacks affected not only the victims at the Embassy and Embassy Annex, but also their family members.  As recounted by the affidavits of the 23 other plaintiffs in this case, the victims' family members experienced extraordinary grief and mental anguish.  See generally Pls.' Mot. for Judicial Notice and for Entry of Default J., Ex. 4.

Plaintiffs filed this lawsuit in October 2022, claiming that Iran and MOIS were responsible for the attacks by providing training and other material support to Hezbollah, a recognized terrorist group.  See SAC ¶¶ 35–36, 39–42.  Plaintiffs served Defendants through diplomatic channels, and when Defendants failed to respond, the Clerk of the Court entered a default.  Plaintiffs then moved for a default judgment as to Defendants' liability under the Foreign Sovereign Immunities Act ("FSIA") and for the appointment of special masters to assess

damages.  Several courts in this district have already found both that (1) Hezbollah was responsible for these specific attacks, and (2) Defendants are liable for the attacks because they provided material support to Hezbollah.  See, e.g., Dammarell v. Islamic Republic of Iran, 404 F. Supp. 2d 261 (D.D.C. 2005) (April 1983 bombing); Brewer v. Islamic Republic of Iran, 664 F. Supp. 2d 43 (D.D.C. 2009) (September 1984 bombing).  Federal Rule of Evidence 201(b) permits courts to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Under this rule, a court "may take judicial notice of related proceedings and records in cases before the same court."  Brewer, 664 F. Supp. 2d at 47 (citation omitted). "Because of the multiplicity of FSIA-related litigation in this jurisdiction, courts in this District have frequently taken judicial notice of earlier, related proceedings."  Bathiard v. Islamic Republic of Iran, No. 16-cv-1549 (CRC), 2019 WL 3412983, at *3 (D.D.C. July 29, 2019) (citation omitted) (collecting cases).  The Court will do the same here.

## II. Legal Standards

Under the FSIA, a plaintiff may obtain a default judgment when the defendant fails to enter an appearance.  See 28 U.S.C. § 1608(e); Fed. R. Civ. P. 55(b)(2).  "[E]ntry of a default judgment is not automatic."  Bathiard, 2019 WL 3412983, at *2 (alteration in original) (citation omitted).  First, the Court must consider whether it has personal jurisdiction over the defendant, Mwani v. bin Laden, 417 F.3d 1, 6–7 (D.C. Cir. 2005), and whether it has subject matter jurisdiction over the action, James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996).  Even then, a plaintiff must establish her right to relief "by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  So rather than accept unsupported allegations as true, the Court must examine the plaintiff's allegations and any proof provided to ensure she carried her burden.

See, e.g., Bluth v. Islamic Republic of Iran, 203 F. Supp. 3d 1, 17 (D.D.C. 2016).  When ruling on a motion for default judgment, the Court may rely upon a plaintiff's "uncontroverted factual allegations, which are supported by . . . documentary and affidavit evidence."  Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (alteration in original) (citation omitted).

### III. Analysis

The Court finds all three requirements for entry of a default judgment—subject matter jurisdiction, personal jurisdiction, and satisfactory evidence—satisfied here.

#### A. Personal Jurisdiction

The FSIA provides for personal jurisdiction where service has been properly made under 28 U.S.C. § 1608(a).  Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019) (citing 28 U.S.C. § 1330(b)).  For service on a "foreign state or political subdivision," § 1608(a) permits service by four methods, in descending order of preference:

> (1) by special arrangement for service between the plaintiff and the foreign state, (2) in accordance with an applicable international convention on service of judicial documents, or, if the first two options are not applicable, (3) by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or, if service cannot be made under the third option, (4) by requesting the Clerk of the Court to send the aforementioned package to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 77–78 (D.D.C. 2017) (internal quotation marks omitted) (quoting 28 U.S.C. § 1608(a)).  "No special arrangement exists between Plaintiffs and Iran, and no applicable international convention on service governs here."  Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71, 82 (D.D.C. 2017) (Cooper, J.).

4

Plaintiffs first attempted to serve the heads of the Iranian Ministry of Foreign Affairs and MOIS by sending a copy of the summons and the complaint by certified mail. See Req. to Issue Summons (ECF No. 46). After this method proved unsuccessful, Plaintiffs duly served Defendants through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4), as confirmed by a letter from the U.S. State Department filed with the Court. See Return of Service (ECF No. 61). The Court therefore finds that service was properly effectuated, and it may therefore exercise personal jurisdiction over Iran and MOIS.

B. Subject Matter Jurisdiction

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." Nemariam v. Federal Democratic Republic of Ethiopia, 491 F.3d 470, 474 (D.C. Cir. 2007) (citation omitted). Under the FSIA, a foreign sovereign is presumptively immune from suit unless an exception applies. See 28 U.S.C. § 1604. Relevant here, the FSIA abrogates a foreign sovereign's immunity where (1) "money damages are sought" (2) "against a foreign state" (3) "for personal injury or death" (4) "that was caused" (5) "by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." Id. § 1605A(a)(1); see Pennington v. Islamic Republic of Iran, No. 19-cv-796 (JEB), 2021 WL 2592910, at *2 (D.D.C. June 24, 2021).

The requirements of this exception are easily met here. Plaintiffs seek money damages against Iran for personal injuries resulting from the April 1983 and September 1984 embassy bombings in Beirut. And because "Iran's complicity in the embassy bombing[s] is not subject to reasonable dispute[,] the Court has no trouble taking as true the factual findings and legal conclusions in decision[s] like Dammarell and Estate of Doe" finding that the bombings were

acts of "extrajudicial killing," for which Iran and MOIS provided material support.  Bathiard, 2019 WL 3412983, at *4.  Iran and MOIS therefore lack immunity from these claims.

The FSIA imposes two additional requirements to establish subject matter jurisdiction.  First, the foreign state must have been "designated as a state sponsor of terrorism" at the time of the act or "as a result of such act" and "remain[] so designated when the claim is filed."  28 U.S.C. § 1605A(a)(2)(A)(i)(I).  Second, the claimant or victim must be a U.S. national, member of the U.S. armed forces, or qualifying employee or contractor of the U.S. government acting within the scope of employment at the time of the act.  Id. § 1605A(a)(2)(A)(ii).  These requirements are readily satisfied here.  Iran was designated as a state sponsor of terrorism in January 1984 in response to its role in sponsoring several terrorist attacks in Lebanon, including the April 1983 bombing.  See Est. of Doe, 808 F. Supp. 2d at 10 (citing Dammarell, 404 F. Supp. 2d at 273).  It has remained designated ever since.  See Bureau of Counterterrorism, State Sponsors of Terrorism, U.S. Dep't of State, https://perma.cc/ZU7W-PMJ8.  The victims in this case were all U.S. government employees who were injured while working at the U.S. Embassy or Embassy Annex at the time of the attacks.  See SAC ¶¶ 1, 10, 22, 25.  And the claims brought by Plaintiffs arise from the victims' resulting injuries.  See id. ¶¶ 49–72.  The Court may therefore exercise subject matter jurisdiction over Plaintiffs' claims.

### C. Satisfactory Evidence

Finally, the Court must determine whether Plaintiffs have provided satisfactory evidence of their claims for the Court to enter a default judgment.  "[T]he Court's conclusion that Iran is liable for the embassy bombing[s] does not by itself provide a sufficient basis for entry of default judgment," as "Plaintiffs must also provide some proof that they suffered personal injury."

Bathiard, 2019 WL 3412983, at *4.  To make this showing, Plaintiffs "may rely upon uncontroverted factual allegations that are supported by affidavits." Id. (citation omitted).

Here, each individual plaintiff has submitted an affidavit on behalf of themselves or the estate they represent.  See Pls.' Mot. for Judicial Notice and for Entry of Default J., Ex. 4.  Three employee victims and the representative of the fourth employee victim's estate attest that they were injured during the attack.  See, e.g., Aff. of Pl. Elie Salameh (ECF No. 64-5) ¶¶ 5–6.  As to the employee victims' family members, each affiant represents that they suffered "extraordinary grief, mental anguish, and . . . emotional distress" because of the victims' injuries.  See, e.g., Aff. of Marwan Rassi (ECF No. 64-5) ¶ 5.  And though the family-member plaintiffs are neither U.S. citizens nor government employees and thus lack a federal cause of action, they "may continue to pursue claims under applicable state and/or foreign law." Est. of Doe, 808 F. Supp. 2d at 20.  The Court therefore finds that the supporting affidavits establish each plaintiff's "claim or right to relief by evidence satisfactory to the court," 28 U.S.C. § 1608(e), and it will grant Plaintiffs' motion for default judgment as to Defendants' liability for their claims.

    D.  Damages

As to the proper measure of damages, the Court will grant Plaintiffs' motions to appoint four special masters.  See Mot. to Appoint Special Masters (ECF No. 65); Mot. to Appoint Additional Special Master (ECF No. 67-1).  "'[T]he courts of the United States may appoint special masters to hear damages claims brought under the state-sponsored terrorism exception to the FSIA." Taylor v. Islamic Republic of Iran, 811 F. Supp. 2d 1, 17 (D.D.C. 2011) (quoting 28 U.S.C. § 1605A(e)(1)).  Given the number of plaintiffs, the Court finds that appointing special masters in this case would not create unreasonable expense or delay and would help efficiently resolve this action.  See Fed. R. Civ. P. 53(a)(3); Taylor, 811 F. Supp. 2d at 17.  Moreover, the

Court finds that the proposed candidates are highly qualified and will therefore appoint them in a separate order that accompanies this Memorandum Opinion.

## IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' motion for default judgment against Defendants on the issue of liability in a separate order accompanying this Memorandum Opinion.  The Court will also enter a separate order appointing Plaintiffs' proposed special masters to make a recommendation to the Court on the issue of damages.

CHRISTOPHER R. COOPER
United States District Judge

Date:  February 4, 2026