**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MOHAMMAD FNEICH, et al.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN, et al.**<br><br>**Defendants.** | **CA NO. 1:24-cv-01843-CRC** |

**REPORT AND RECOMMENDATION OF SPECIAL MASTER PAUL GRIFFIN REGARDING COMPENSATORY DAMAGES FOR THE HASSAN MAKKI FAMILY**

In accordance with the Order of Reference entered pursuant to the provisions of Federal Rule 53, the Special Master has received evidence with regard to all issues of compensatory damages from witnesses as set forth below. This case arises from two terrorist attacks that occurred at the U.S. Embassy in Beirut, Lebanon on April 18, 1983, and September 20, 1984. Plaintiffs have brought this case against Defendants Islamic Republic of Iran and the Iranian Ministry of Information and Security (MOIS) (collectively "Defendants") pursuant to the District of Columbia Wrongful Death Act, the District of Columbia Survival Act, and the Foreign Sovereign Immunities Act, (28 U.S.C. § 1602 et seq.), as amended by § 1083 of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181.

On April 18, 1983, and September 20, 1984, the U.S. Embassy was attacked by terrorist. These attacks resulted in the death of at least 78 people and injuries to over 120 people, which include US service members and Lebanese contractors. The 1983 and 1984 attacks on the U.S. Embassy in Beirut, Lebanon were made possible by Defendants' financial, operational, and technical support of Hezbollah. The actions of Defendants' agents constitute acts of torture,

extrajudicial killing, and the provision of material resources for such acts, as those terms are defined in 18 U.S.C. § 2339A.

Plaintiffs are seeking damages for the injuries sustained as a result of the attack on the U.S. Embassy in Beirut, Lebanon on April 18, 1983, and/or September 20, 1984.

**Background**

On April 18, 1983, a suicide bomber working with Hezbollah detonated a truck bomb laden with hundreds of pounds of explosives into the main entrance of the U.S. Embassy in Beirut, Lebanon, causing seven floors of the Embassy to collapse. The attack killed 63 people, wounding over 100 others to include American and Lebanese personnel. After relocating the Embassy due to this vicious and bloody attack, shortly after noon on September 20, 1984, the same Hezbollah parties, again wreaked havoc. A station wagon loaded with some 1500 kilograms of explosives was driven onto the embassy compound at high speed and was designated in the vicinity of a concrete cistern filled with water in front of the Embassy. The Embassy building was demolished. This second attack killed 11 people and injuring over 58 more Lebanese and American personnel.

The events of these two days and its aftermath have been documented and will not be repeated except as relevant to the assessment of individuated damages. It is undisputed that the September 20, 1984, terrorist attack on the U.S. Embassy Annex in Beirut, Lebanon, was carried out by the terrorist group Hezbollah, and that the financing, training, and preparation for the attack were conducted by Defendants. This Court has held in prior cases that Defendants directed and facilitated the attack and therefore proximately caused the injuries sustained by the victims of those attacks. In each case, Defendants were held liable to the victims of these attacks and their immediate family members for compensatory damages. See, e.g., Barry v. Islamic Republic of Iran, 437 F. Supp. 3d 15 (D.D.C. 2020) (Contreras, J.) ("Barry II") (holding Iran liable for the

April 18, 1983 U.S. Embassy bombing and the September 20, 1984 U.S. Embassy Annex bombing in Beirut); Brewer v. Islamic Republic of Iran, 664 F. Supp. 2d 43 (D.D.C. 2009) (Huvelle, J.) (holding Iran liable for the 1984 attack); Welch v. Islamic Republic of Iran, No. 01-cv-00863 (CKK)(AK), 2007 U.S. Distr. LEXIS 99191 (D.D.C. Sept. 20, 2007) (mag. op.), adopted by Final Judgment, ECF 70, No. 01-cv-00863 (CKK)(AK), 2007 U.S. Dist. LEXIS 99192 (D.D.C. Oct. 15, 2007) (Kollar-Kotelly, J.) (holding Iran liable for the 1984 attack); Estate of John Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1 (D.D.C. 2011) (holding Iran liable for the 1983 and 1984 attacks); Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d 128 (D.D.C. 2001) (Jackson, J.) (holding Iran liable for the 1984 attack).

## Procedural History

This Court has repeatedly found Defendants, the Islamic Republic of Iran and its Ministry of Information and Security, legally responsible for the provision of material, financial, and logistical support in the planning of the attack of the American and American contractors in relation to the April 18, 1983, and September 20, 1984, Beirut Embassy Bombings. *See above.* In all of these cases, Defendants were held liable for acts of state sponsored terrorism, with judgments entered in favor of the Plaintiffs accordingly. *Id.* In these opinions, the Court held that the surviving family members have suffered and continue to suffer mental anguish and loss of society. *Id.*

On August 3, 2023, Plaintiffs filed a complaint against the above-named Defendants. On August 6, 2025, this Court entered an order Granting Plaintiffs' request for a Default Judgment as to Liability, taking judicial notice of the factual findings set for the in the decision of this Court, in the related cases of *Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15 (D.D.C. 2020) (Contreras, J.) ("Barry II") (holding Iran liable for the April 18, 1983, U.S. Embassy bombing and the September 20, 1984, U.S. Embassy Annex bombing in Beirut); *Brewer v. Islamic Republic of*

*Iran*, 664 F. Supp. 2d 43 (D.D.C. 2009) (Huvelle, J.) (holding Iran liable for the 1984 attack); *Welch v. Islamic Republic of Iran*, No. 01-cv-00863 (CKK)(AK), 2007 U.S. Distr. LEXIS 99191 (D.D.C. Sept. 20, 2007) (mag. op.), adopted by Final Judgment, ECF 70, No. 01-cv-00863 (CKK)(AK), 2007 U.S. Dist. LEXIS 99192 (D.D.C. Oct. 15, 2007) (Kollar-Kotelly, J.) (holding Iran liable for the 1984 attack); *Estate of John Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1 (D.D.C. 2011) (holding Iran liable for the 1983 and 1984 attacks); *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128 (D.D.C. 2001) (Jackson, J.) (holding Iran liable for the 1984 attack). On September 10, 2025, the Court appointed special masters to consider issues on compensatory damages.

In accordance with this directive, and in keeping with the Federal Rules of Evidence, the Special Master makes the following findings and recommendations.

## FINDINGS OF FACT

Hassam Makki was an employee at the U.S. Embassy in Beirut, Lebanon from December 14, 1976, until May 5, 1990. His family is included in two separate cases concerning the April 18, 1983, and Sept. 20, 1984, U.S. Embassy attacks in Beirut, Lebanon. Hassam was working at the time of both incidents.[1]

Hassan Makki family consists of the following people: Estate of Hassam Makki (victim), Estate of Mustafa Hassan Makki (father), Estate of Zeinab Ahmad Makki (mother), Fatima Makki (sister), Rawda Makki (sister), Mohamad Makki (brother), Mona Makki (sister), Leila Makki (sister), Ahmad Makki (brother), Makieh Makki (sister), Malake Makki (sister), Ali Makki (brother), Mariam Makki (sister), Estate of Samira Ghadar (wife), Hussein Makki (son), Zeina Makki (daughter), Ali Hassan Makki (son), and Marina Makki (daughter).[2] The following family

[1] Makki Family Affidavits
[2] Hassan Makki Family Tree

members are included in the *Fneish* litigation: Fatima Makki (sister), Rawda Makki (sister), Mohamad Makki (brother), Mona Makki (sister), Leila Makki (sister), Ahmad Makki (brother), Makieh Makki (sister), Malake Makki (sister), Ali Makki (brother), Mariam Makki (sister). The remaining family members are either included in the *El Halabi* matter, did not qualify, or chose not to participate.[3]

***Embassy Bombing Incident***

The Estate of Hassam Makki is included in the *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190 case. A detailed description of the Embassy attacks on April 18, 1983, and September 20, 1984, was included in Special Master Michael J. Borden's report, stating the following:

> Hassan Makki was Born on January 4, 1937 and was, throughout his life, a Lebanese citizen. Mr. Makki was an employee of the United States Government at the U.S. Embassy in Beirut, Lebanon from December 14, 1976 until May 5, 1990. Mr. Makki was working and physically present at the U.S. Embassy at the time of the terrorist attack on April 14, 1983 [sic] and also at the time of the attack on September 20, 1984. At the time of the attacks, and until his death, Mr. Makki was married to Samira Ghadar. Mr. Makki died on February 28, 2017.
>
> Evidence of Hassan Makki's physical injuries from the Embassy Attacks comes from the Affidavit of his son, Hussein Makki, and the deposition testimony of Hussein Makki and Hassan Makki's other children. The evidence indicates that Hassan Makki suffered injuries to his hand and head in the first attack, evidently from shrapnel or other debris. His children recall seeing him in bed following the attack, bruised and with his hand and head heavily bandaged. Mirna Makki recalls conversations with her father many years later in which he recounted his memory of flying through the air after the explosion happened, and of seeing dead bodies and body parts at the scene. The second Embassy attack caused an unspecified injury to Hassan Makki's leg, which resulted in a limp for some period of time.
>
> According to the testimony of his children, Hassan Makki also suffered severe emotional distress in the aftermath of the attacks. Hussein Makki described his father as "broken" emotionally, and reported that his father experienced severe guilt over the death of a young embassy guard whom the elder Makki had helped obtain employment as a guard at the Embassy. Ali Makki described his father as "severely depressed" and "distant" after the attacks. He explained that his father

[3] On May 29, 2024, the Court granted Plaintiffs' Motion to Withdraw as Attorney and split the case/parties into two pending actions. The cases are *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190 and *Fneish, et al. v. Iran, et al.* 1:24-cv-1843. *El Halabi* Dk. 36.

lived in constant fear, was emotionally fragile, and had trouble communicating with his family.[4]

## 1) FATME MAKKI[5]

***Deposition Details***

- The deposition of Fatme Makki was taken virtually on August 13, 2024, in the case of *Fneish, et al. v. Islamic Republic of Iran, et al.*, in the United States District Court for the District of Columbia, Case No. 1:24-cv-1843 in the presence of a notary and an Arabic translator.[6]

***Personal Information***

Fatme Makki was born on March 1, 1942, in Lebanon and throughout her life has been a Lebanese citizen.[7] She is the sister of Hassan Makki.[8] She was born in Beirut, and lived in Beirut except for one year during the Lebanese Civil War.[9] She is married to Kmaal Sudaiha and has four children.[10] She lived in Hazmiych, Lebanon in 1983 with her husband and children.[11] Fatme's husband would drive Hassan back and forth from work.[12]

***Psychological/Physical Impact***

Clearly from the totality of her testimony, for each of the attacks Fatme was terrified that her brother Hassan was dead. Fatme testified that due to the attacks she had a breakdown, pulling her hair, devastated, and deeply saddened.[13] She stated that she was "afraid to go to bed, that something bad would happen to me, as had happened to my brother [Hassen]. We don't want to

---

[4] Special Master Michael J. Borden report for the Makki Family (Oct. 21, 2024) in *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190. *El Halabi* Dk. 50

[5] Due to the difficulty of translating from Arabic to English, Fatme Makki's name is listed different ways: Fatme Makki, Fatme Mustapha Hassan, Fatme Mustapha Makki. Fatme Makki Passport; Fatme Makki Retainer; Hassam Makki Family Tree

[6] Fatme Makki Dep. (Aug. 6, 2023)

[7] Fatme Makki Aff. (Aug. 2, 2023)

[8] Fatme Makki Aff. (Aug. 2, 2023)

[9] Fatme Makki Dep. 4-5 (Aug. 6, 2023)

[10] Fatme Makki Dep. 5 (Aug. 6, 2023)

[11] Fatme Makki Dep. 7 (Aug. 6, 2023)

[12] Fatme Makki Dep. 8 (Aug. 6, 2023)

[13] Fatme Makki Dep. 9-10 (Aug. 6, 2023)

die on the streets and that something bad would happen to us."[14] As a result, Fatme became bitter and was in a constant state of anger and anxiety.[15] Fatme provided an affidavit describing her injuries, where she stated "I have suffered lasting physical, emotional and psychological effects from that day, and the emotions distress of that experience have deep impact to this day. The two attacks deepened my trauma and heightened by fear causing persistent anxiety and intrusive thoughts. As a result, my sense of safety has been weakened and my overall wellbeing significantly impaired."[16]

## 2) LEILA MUSTAPHA MAKKI[17]

### *Deposition Details*

- The deposition of Leila Makki was taken virtually on Dec. 15, 2023, in the case of in the case of *El Halabi, et al. v Iran, et al.*., in the United States District Court for the District of Columbia, Case No. 1:22-cv-3190 in the presence of a notary and an Arabic translator.[18]

### *Personal Information*

Leila Makki was born on May 1, 1952, in Beirut, Lebanon and is now and always has been a Lebanese citizen.[19] She is the sister of Hassan Makki.[20] She married Jamil Al Kordi in 1975 and has four children.[21] Leila had a strong, close relationship with Hassan testifying that he

---

[14] Fatme Makki Dep. 10 (Aug. 6, 2023)
[15] Fatme Makki Dep. 11-12 (Aug. 6, 2023)
[16] Fatme Makke Damages Aff. (June 11, 2026)
[17] Due to the difficulty of translating from Arabic to English, Leila Makki's name is listed different ways: Leila Makki, Leila Mustapha Makki, Laila Mostaffa Makki. Leila Makki Passport; Hassan Makki Family Tree; Leila Makki Aff. (Aug. 2, 2023); Laila Makki Dep. 8 (Dec. 15, 2023)
[18] Lailia Makke Dep. (Dec. 15, 2023); On May 29, 2024, the Court granted Plaintiffs' Motion to Withdraw as Attorney and split the case/parties into two pending actions. The cases are *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190 and *Fneish, et al. v. Iran, et al.* 1:24-cv-1843. *El Halabi* Dk. 36.
[19] Leila Makki Aff. (Aug. 2, 2023); Leila Makki Dep. 9 (Dec. 15, 2023)
[20] Leila Makki Aff. (Aug. 2, 2023)
[21] Leila Makki Dep. 10 (Dec. 15, 2023)

was "respected because he was the eldest and he was very kind and protective of all the girls."[22] In 1983, she lived in Beirut, Lebanon with her husband and small children.[23]

***Embassy Bombings***

As for the April 18, 1983, Embassy attack, Leila testified that "she was at home in Beirut. She states that where she lives is close enough to the embassy to hear the explosion, so she recalls hearing the explosion and turning the TV on and they were broadcasting and stating what had happened. She states that she still had, at the time, very young kids, so she wasn't able to get out and go search for her brother. But she recalls that the other siblings went out to – to search for him. It was a very scary day."[24] She did not learn her brother survived until the next day.[25] She had learned that her brother had survived and was at a hospital with minor physical injuries to his face and legs.[26]

***Psychological/Physical Impact***

After the April 18, 1983, attack, Leila stated that it "was devastating news and very troubling to – to imagine what had happened to him [Hassan]. It was very upsetting. As you know, . . . he's a brother and as you can imagine, we were very upset. I was in tears and I was very shaken up by the thought that something had happened to him."[27]

As for the Sept. 20, 1984, attack, after learning her brother was at the Embassy when it was attacked, she testified that it "was very upsetting and tiring to hear that he was involved in a second attack. Obviously, we were – we were very worried of the severity of the situation, and we were – we were just very, very fearful that, you know, this time, this is the one."[28]

---

[22] Leila Makki Dep. 18 (Dec. 15, 2023)
[23] Leila Makki Dep. 16 (Dec. 15, 2023)
[24] Leila Makki Dep. 16-17 (Dec. 15, 2023)
[25] Leila Makki Dep. 19 (Dec. 15, 2023)
[26] Leila Makki Dep. 19, 20 (Dec. 15, 2023)
[27] Leila Makki Dep. 18 (Dec. 15, 2023)
[28] Leila Makki Dep. 24 (Dec. 15, 2023)

The attacks left a deep and lingering impact on Leila. She testified that "the events took a toll on them severely, and she said that they're in constant worry and they would call her brother. They would call him a lot to check in on him and to check in on everybody else. . . . fear had taken over."[29] Leila still struggles with flashbacks to those terrifying days each time something happens in Lebanon, creating "generational fear."[30]

### 3) MAKIE MAKKI[31]

***Deposition Details***

- The deposition of Makie Makki was taken virtually on Dec. 15, 2023, in the case of in the case of *El Halabi, et al. v Iran, et al.*., in the United States District Court for the District of Columbia, Case No. 1:22-cv-3190 in the presence of a notary and an Arabic translator.[32]

***Personal Information***

Makie Makki was born on Feb. 14, 1957, in Lebanon and is now and always has been a Lebanese citizen.[33] She is the sister of Hassan Makki.[34] She is married with three children and lives in Beirut, Lebanon.[35]

***Embassy Bombings***

On April 18, 1983, Makie was "at home. She states that her kids were young and she heard the explosion because she doesn't live too far from the embassy. So, she heard and felt the explosion. She talks about back then there was no cell phones. So it wasn't easy to . . . know

---

[29] Leila Makki Dep. 26 (Dec. 15, 2023)
[30] Leila Makki Dep. 27-28 (Dec. 15, 2023)
[31] Due to the difficulty of translating from Arabic to English, Makie Makki's name is listed different ways: Makie Makki and Makkiya Mustafa Makki. Makie Makki Aff. (Aug. 2, 2023); Makkiya Makki Dep. 6 (Dec. 15, 2023); Hassan Makki Family Tree
[32] Makkiya Makki Dep. (Dec. 15, 2023); On May 29, 2024, the Court granted Plaintiffs' Motion to Withdraw as Attorney and split the case/parties into two pending actions. The cases are *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190 and *Fneish, et al. v. Iran, et al.* 1:24-cv-1843. *El Halabi* Dk. 36.
[33] Makie Makki Aff. (Aug. 2, 2023)
[34] Makie Makki Aff. (Aug. 2, 2023)
[35] Makkiya Makki Dep. 6-7 (Dec. 15, 2023)

exactly what's going on. But she remembers turning the news on and finding out through the news that the explosion had happened to the embassy. . . . [i]t's a very terrifying news of knowing that a family member is part of something that big. So she said that she stayed at home to attend to the kids, but all the . . . siblings . . . went out searching for him [Hassan]."[36]

***Psychological/Physical Impact***

As a result of the attacks, Makei testified that she was traumatized and in shock.[37] The attacked "took a toll on her" and her family.[38] She lived in constant fear with a "cloud of fear over the whole family" as a result of both Embassy attacks and the injuries to her brother Hassan.[39] Evident from her testimony and the related video, she was deeply impacted and injured as a result of both attacks and still struggles with the ongoing injuries. Makie provided an affidavit which stated "I have lived with the psychological, emotional and physical consequences of what I experience [with the bombings]. The two attacks compounded on another, leaving deep scars on my mind and heart, amplifying my fear and producing persistent anxiety and intrusive memories. Theis combined with the trauma has eroded my sense of safety and diminished my overall well-being."[40]

[36] Makkiya Makki Dep. 10-11 (Dec. 15, 2023)
[37] Makkiya Makki Dep. 19 (Dec. 15, 2023)
[38] Makkiya Makki Dep. 17 (Dec. 15, 2023)
[39] Makkiya Makki Dep. 17 (Dec. 15, 2023)
[40] Makie Makki Damages Aff. (June 11, 2026)

### 4) MALAKI MAKKI[41]

***Deposition Details***

- The deposition of Malaki Makki was taken virtually on Dec. 15, 2023, in the case of *El Halabi, et al. v Iran, et al.*., in the United States District Court for the District of Columbia, Case No. 1:22-cv-3190 in the presence of a notary and an Arabic translator.[42]

***Personal Information***

Malaki was born on July 1, 1960, in Beirut, Lebanon and is now and always has been a Lebanese citizen.[43] She is the sister of Hassan Makki.[44] She currently still lives in Beirut, Lebanon with her husband and children.[45]

***Embassy Bombings***

On April 18, 1983, Malaki testified that she was at her house when the explosion happened.[46] She felt and heard a massive explosion, and all the landline phones stopped working.[47] Malaki immediately turned on the TV and found out that the U.S. Embassy, where her brother worked, had been attacked.[48] She was pregnant at the time and was not able to go out looking for her brother so she went to her mother's house to see if she could get more information.[49] It was many hours later until she learned her brother had survived.[50]

[41] Due to the difficulty of translating from Arabic to English, Malaki Makki's name is listed in different ways: Malake Makki, Malaki Mustafa Makki, Malakeh Mostafa Maki and Malaki Makki. Malake Makki Passport; Malaki Makki Aff. (Aug. 2, 2023); Malaki Makki Dep. (Dec. 15, 2023); Hassan Makki Family Tree; Malakeh Maki Damages Aff.
[42] Malaki Makki Dep. (Dec. 15, 2023); On May 29, 2024, the Court granted Plaintiffs' Motion to Withdraw as Attorney and split the case/parties into two pending actions. The cases are *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190 and *Fneish, et al. v. Iran, et al.* 1:24-cv-1843. *El Halabi* Dk. 36.
[43] Malaki Makki Aff. (Aug. 2, 2023)
[44] Malaki Makki Aff. (Aug. 2, 2023)
[45] Malaki Makki Dep. 6-7 (Dec. 15, 2023)
[46] Malaki Makki Dep. 9 (Dec. 15, 2023)
[47] Malaki Makki Dep. 9 (Dec. 15, 2023)
[48] Malaki Makki Dep. 9 (Dec. 15, 2023)
[49] Malaki Makki Dep. 9 (Dec. 15, 2023)
[50] Malaki Makki Dep. 9 (Dec. 15, 2023)

On the day of the attack, Malaki provided an affidavit stating that when she "heard the news of the bombing and my brother's injury, we rushed to look for him and check on his condition despite the grave dangers that surrounded moving around Beirut at that time due to the difficult security conditions and the widespread presence of militias and snipers in many areas."[51] Malaki had recently given birth, but she still went to the streets looking for her brother.[52]

***Psychological/Physical Impact***

As a result of the attacks, Malaki was left worried and very upset.[53] She developed fear "and a worried mindset state for her about what's happening with the – with the country, where is it going, and who else – part of her family is going to be in harm's way."[54] She was left feeling constantly worried about herself and her family, especially watching Hassan struggle after the attacks.[55] She stated that the "news of [her] . . . brother's injury and the fear for his life caused me severe anxiety, fear, and immense psychological distress, which directly affected [her] . . . ability to care for and look after my infant child during that critical period."[56] As a result of the attack and the injuries suffered by her brother, Malaki still suffers from anxiety and "deep emotional, psychological, and physical scars" which she still struggles.[57]

---

[51] Malakeh Maki Damages Aff.
[52] Malakeh Maki Damages Aff.
[53] Malaki Makki Dep. 11 (Dec. 15, 2023)
[54] Malaki Makki Dep. 14 (Dec. 15, 2023)
[55] Malaki Makki Dep. 13 (Dec. 15, 2023)
[56] Malakeh Maki Damages Aff.
[57] Malakeh Maki Damages Aff.

## 5) MARIAM MUSTAPHA MAKKI[58]

### *Deposition Details*

- The deposition of Mariam Makki was taken virtually on Aug. 9, 2023, in the case of *El Halabi, et al. v Iran, et al.*., in the United States District Court for the District of Columbia, Case No. 1:22-cv-3190 in the presence of a notary and an Arabic translator.[59]

### *Personal Information*

Mariam Makke was born on April 22, 1968, in Lebanon and is now and always has been a Lebanese citizen.[60] She is the sister of Hassan.[61] When the April 18, 1983, U.S. Embassy attack occurred, Mariam was around 14 years old and lived with her parents in Beirut, Lebanon.[62] At that time, Hassan was like a second father to Mariam and she had a very close relationship with her brother, largely due to her father passing away when she was nine.[63]

### *Psychological/Physical Impact*

As a result of the embassy attacks, Mariam was "completely devastated. She had . . . a breakdown, and the neighbors had to throw water on her."[64] Mariam was terrified that the only father figure she had left was murdered.[65] After the attacks, she was left in "a constant state of fear."[66] Mariam testified that "I was in a constant state of fear for my . . . brother's life. Because

[58] Due to the difficulty of translating from Arabic to English, Mariam Makki's name is listed different ways: Mariam Mustapha Makki and Mariam Makki. Mariam Makki Passport; Mariam Makki Aff. (Aug. 2, 2023); Hassan Makki Family Tree
[59] Mariam Makki Dep. (Aug. 9, 2023); On May 29, 2024, the Court granted Plaintiffs' Motion to Withdraw as Attorney and split the case/parties into two pending actions. The cases are *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190 and *Fneish, et al. v. Iran, et al.* 1:24-cv-1843. *El Halabi* Dk. 36.
[60] Mariam Makki Aff. (Aug. 2, 2023)
[61] Mariam Makki Aff. (Aug. 2, 2023)
[62] Mariam Makki Dep. 4-5 (Aug. 9, 2023)
[63] Mariam Makki Dep. 5 (Aug. 9, 2023)
[64] Mariam Makki Dep. 5 (Aug. 9, 2023)
[65] Mariam Makki Dep. 6 (Aug. 9, 2023)
[66] Mariam Makki Dep. 7-8 (Aug. 9, 2023)

especially after the second explosion. So whenever there would be a bombing or an explosion in Beirut or in Lebanon. I would immediately think that this had happened to my brother also."[67]

### 6) ALI MUSTAPHA MAKKI[68]

***Deposition Details***

- The deposition of Ali Makki was taken virtually on August 9, 2023, in the case of in the case of *El Halabi, et al. v Iran, et al.*., in the United States District Court for the District of Columbia, Case No. 1:22-cv-3190 in the presence of a notary and an Arabic translator.[69]

***Personal Information***

Ali Makki was born on May 26, 1963, in Lebanon and is now and always has been a Lebanese citizen.[70] He is the brother of Hassan Makki.[71] He is married with two children and lives in Beirut, Lebanon.[72] He works as a driver.[73]

Growing up, Hassan was the oldest brother in Ali's home, taking over the role of father when Ali's father passed away in 1979.[74] In 1983, Ali lived at home with his siblings and mother wand was around 17 years old at the time.[75]

---

[67] Mariam Makki Dep. 9 (Aug. 9, 2023)

[68] Due to the difficulty of translating from Arabic to English, Ali Makki's name is listed different ways: Ali Mustapha Makki, Ali Makki, Ali M. Makki. Ali Makki Passport; Hassan Makki Family Tree; Ali Makke Dep. (Aug. 9, 2023)

[69] Ali Makke Dep. (Aug. 9, 2023); On May 29, 2024, the Court granted Plaintiffs' Motion to Withdraw as Attorney and split the case/parties into two pending actions. The cases are *El Halabi, et al. v Iran, et al.*, 1:22-cv-3190 and *Fneish, et al. v. Iran, et al.* 1:24-cv-1843. *El Halabi* Dk. 36.

[70] Ali Makke Aff. (Aug. 8, 2023)

[71] Ali Makke Aff. (Aug. 8, 2023)

[72] Ali Makke Dep. 7 (Aug. 9, 2023)

[73] Ali Makke Dep. 8 (Aug. 9, 2023)

[74] Ali Makke Dep. 9, 12(Aug. 9, 2023)

[75] Ali Makke Dep. 12 (Aug. 9, 2023)

***Psychological/Physical Impact***

Ali went several hours before learning his brother Hassan had survived concerning both attacks.[76] This left him unsure if his brother had survived, sad, depressed, and broken.[77] He was left with a constant fear that his brother would be killed, filling Ali with a constant state of anxiety.[78] He still struggles with feelings of dread and fear and from his testimony clearly struggles with PTSD.[79]

## LAW ON DAMAGES

Pursuant to the Foreign Sovereign Immunities Act:

> A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office employment, or agency, shall be liable to
>
> (1) A national of the United States,
>
> (2) A member of the armed forces,
>
> (3) An employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or
>
> (4) The legal representative of a person described in paragraph (1), (2), or (3),
>
> for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

(28 U.S.C. § 1605A(c)).

[76] Ali Makke Dep. 16 (Aug. 9, 2023)
[77] Ali Makke Dep. 17, 22 (Aug. 9, 2023)
[78] Ali Makke Dep. 23 (Aug. 9, 2023)
[79] Ali Makke Dep. 23-24 (Aug. 9, 2023)

Pursuant to the District of Columbia Standardized Civil Jury Instructions §13.01, the finder of fact:

> May award damages for any of the following harms that you find [Defendant's] negligence or wrongful conduct caused:
>
> 1. The extent and duration of any physical injuries sustained by [Plaintiff];
> 2. The effects that any physical injuries have on the overall physical and emotional well-being of [Plaintiffs];
> 3. Any physical pain and emotional distress that [Plaintiff] has suffered in the past or may suffer in the future;
> 4. Any disfigurement or deformity suffered by [Plaintiff], as well as any humiliation or embarrassment associated with the disfigurement or deformity;
> 5. Any inconvenience [Plaintiff] has experienced in the past or may experience in the future;
> 6. Any medical expenses incurred by [Plaintiff] in the past or may incur in the future;
> 7. Any loss of earnings that [Plaintiff] has incurred in the past or may incur in the future; and
> 8. Any damage or loss to [Plaintiff's] personal property.

(D.C. Standardized Civil Jury Inst. §13.01).

Furthermore, if the Plaintiffs have "offered evidence that [Defendant's] [negligence/wrongful conduct] caused [Plaintiff] to suffer injury, and that the effects of that injury still exist today, more than [40 years] after the incident[,] [a]lthough no physician or other expert testified about how long the effects of the injury might last, you are permitted but not required to conclude from the facts and circumstances of the case and from the nature and duration of the injury, that [Plaintiff] has suffered a permanent injury and award any damages accordingly." (D.C. Standardized Civil Jury Inst. §13.02).

As pertains to Past Lost Earnings, "[t]o determine the reasonable value of the time lost by [Plaintiff] from [his/her] work caused by [Defendant's] negligence, you should consider any evidence of [Plaintiff's] actual earnings and the work that [he/she] normally performed before the injury. You should then determine the amount that [Plaintiff] was reasonably certain to have earned during the time lost from work because of [Defendant's] negligence." (D.C. Standardized Civil Jury Inst. §13.04). Regarding Future Lost Earnings, the fact finder:

> may award [Plaintiff] an amount that will reasonably and adequately compensate [him/her] for any loss of earnings which [he/she] is reasonably certain to suffer in the future. In determining this amount, you may consider several factors:
>
> 1. [Plaintiff's] age, health, physical and/or mental ability and earning capacity before the injury;
>
> 2. [Plaintiff's] likely future earnings for [his/her] remaining working life, if the injury had not occurred, reduced to present value;
>
> 3. [Plaintiff's] decreased earning capacity as a result of the injury;
>
> 4. [Plaintiff's] likely future earnings for [his/her] remaining working life, taking into account the injury and how long it may affect both earnings and working life, reduced to present value;
>
> 5. The effects of inflation when estimating [Plaintiff's] future earnings.

(D.C. Standardized Civil Jury Inst. §13.05).

As pertains to the loss of consortium damages that may be sought:

> you may consider in this case, [Plaintiff (husband or wife)] is seeking damages for loss of consortium. *Consortium* means not only the injured spouse's material services, but also includes love, affection, companionship, sexual relations and other matters generally associated with a marital relationship.
>
> You may award damages to [Plaintiff] from the person whose negligence caused the injuries if you find that:
>
> (1) Physical injury to [the injured spouse] had an adverse effect upon [Plaintiff's] right to consortium; or
>
> (2) Plaintiff suffered an actual loss of services even if Plaintiff's spouse did not suffer physical injury.

> To decide the amount that would fairly and reasonably compensate [Plaintiff] for loss of consortium, you should consider the facts of the is case in the light of your own experience.
>
> The services and companionship that a spouse provides may be, and often are, of such character that no witness can say precisely what they are worth. Often, consortium, that is, services and companionship, will have no market value equivalent. Nevertheless, a husband or wife is entitled to damages for loss of consortium even if there is no specific testimony about the precise value of an injured spouse's services and companionship.

(D.C. Standardized Civil Jury Inst. §13.06).

The finder of fact may also award damages for emotional distress:

> [Plaintiff] is seeking damages for emotional distress. If you find [Defendant's] [conduct][action][negligence] caused [Plaintiff] emotional distress, then you may award damages for the emotional distress. [Plaintiff] has the burden to prove the amount of damages that fairly compensates [him/her]. There is no exact standard or mathematical formula for deciding the compensation to be awarded for this type of harm. Nor is the testimony of any witness required about the amount of compensation. To decide the amount that would fairly and reasonably compensate [Plaintiff] for emotional distress, you should consider the facts of this case in the light of your own experience and common sense.
>
> [Elements to consider when deciding a damages award include: any mental pain and suffering, fear, inconvenience, nervousness, indignity, insult, humiliation, or embarrassment that [Plaintiff] proves [he/she] suffered directly because of [Defendant's] [conduct][action][negligence].]

(D.C. Standardized Civil Jury Inst. §13.09).

Finally, Punitive Damages may be awarded pursuant to 28 U.S.C. §1605A(c): "A foreign state that is or was a state sponsor of terrorism . . . shall be liable . . . for personal injury or death . . . [for which] [d]amages may include economic damages, solatium, pain and suffering, and punitive damages." The D.C. Court of Appeals has held that the "two fold purpose of punitive damages is 'to punish unlawful conduct and to deter its repetition.' . . . (punitive damages 'operate as 'private fines' intended to punish' and are 'an expression of .. . moral condemnation'. . .)" *Chatman v. Lawlor*, 831 A.2d 395, 402 (D.C. 2003). Further, the "reasonableness of a punitive damages award is determined by three 'guideposts': (1) the reprehensibility of the defendant's

conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages and any potential civil or criminal penalties." *Chatman v. Lawlor*, 831 A.2d 395, 405 (D.C. 2003).

**ANALYSIS OF DAMAGES LAW TO FINDINGS OF FACT**

To recover damaged, "a FSIA default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq,* 328 F.3d 680, 684-85 (D.C. Cir. 2003) (*citation omitted*).

**Non-Economic Damages**

Throughout the legal history of the application of the Foreign Sovereign Immunities Act to terrorist activities conducted by Iran, there has been ample case law addressing the manner in which to evaluate the non-economic damages incurred. On December 22, 2006, this Court issued its opinion in the matter of *Estate of Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 299 (D.D.C. 2006).

*Heiser* held that "[w]hile the loss suffered by the plaintiffs in these cases in undeniably difficult to quantify, courts typically award between $8 million and $12 million for pain and suffering resulting from the death of a spouse approximately $5 million to a parent whose child was killed and approximately $2.5 million to a plaintiff whose sibling was killed." *Estate of Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229, 269 (2006) (*See also Valore v. Islamic Republic of Iran*, 700 F.Supp.2d at 83 – 84; *Brewer v. Islamic Republic of Iran*, 664 F.Supp.2d 43, 57-58(D.D.C. 2009)).

Subsequent to *Heiser*, this Court adopted the *Heiser* Matrix: "This Court finds that the damages framework set forth in *Heiser* to be an appropriate measure of damages for those family members of victims who died in this attack." *Peterson II* at 51 - 52. The Court then pivoted away

from the solatium damages and directed its attention to the damages model associated with those servicemembers and their families for those who survived the terrorist attack: "The Court finds that the framework detailed in *Blais*[80] is appropriate to help determine damages for those surviving servicemen and their families seeking redress." *Peterson v. Islamic Republic of Iran*, 515 F.Supp.2d 25, 51 – 52 (D.D.C. 2007). The individual awards for the surviving servicemember for non-economic damages varied between $2 million to $12 million based on the various physical injuries suffered.

The Court also issued a ruling in *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52 (D.D.C. 2010). *Valore* examined the initial award to the survivors of terrorist attacks in the *Peterson* case and reaffirmed the following:

> Damages for surviving victims are determined based upon an assessment of such factors as "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Peterson II,* 515 F.Supp.2d at 52 n. 26 (quotation omitted). "In awarding pain and suffering damages, the Court must take pains to ensure that individuals with similar injuries receive similar awards." *Peterson II,* 515 F.Supp.2d at 54. Thus in *Peterson,* the Court granted a baseline award of $5 million to individuals suffering such physical injuries as compound fractures, severe flesh wounds, and wounds and scars from shrapnel, as well as "lasting and severe psychological pain." *Id.* The Court was willing to depart upward from this baseline to $7.5–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead, as was one soldier who "was placed in a body bag [and] buried alive in a morgue for four days until someone heard him moaning in pain." *Id.* Similarly, the Court was willing to depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire. *Id.* With these

---

80 In *Blais v. Islamic Republic of Iran*, 459 F.Supp.2d 40 (D.D.C. 2006), the Court determined that, "[w]ith respect to pain and mental anguish damages, the Court admits that assessing the amount of compensatory damages for pain and suffering due an injured plaintiff is undeniably difficult. This Court has, however, established a general framework for making such a determination. In cases that involve an attack where the victim survives, and where no captivity occurred, courts typically award a lump sum award based in large part on an assessment of the following factors: "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Id.* at 73." *Blais v. Islamic Republic of Iran,* 459 F. Supp. 2d 40, 59 (D.D.C. 2006), *enforcement granted*, No. 02-CV-285 (RCL), 2011 WL 13376985 (D.D.C. Dec. 2, 2011).

> considerations in mind, the Court now considers whether departures recommended by the special masters are warranted.

*Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83–84 (D.D.C. 2010).

In addition to the case law cited above, I have also reviewed the Plaintiffs' Proposed Findings of Fact and Conclusions of Law on Adjustments of Non-Economic Damages Matrix. I concur with the brief and find that an upward adjustment of the *Heiser* Matrix consistent with the Consumer Price Index is a just and fair modification to make at this point in time, twenty years after *Heiser*. The modification recommendation was identified as follows:

| **Claimant** | **2006 Established Base Matrix** | **2006 Upward Adjustment** | **2006 Downward Adjustment** | **2026 Adjusted Matrix** |
|---|---|---|---|---|
| Spouse of Decedent | $8-$12 million | | | $13,156,960.24 – $19,735,440.36[81] |
| Parent/Child of Decedent | $5 million | | | $8,223,100.15 |
| Sibling of Decedent | $2.5 million | | | $4,111,550.08 |
| Survivor | $5 million | $12 million | $1.5 million | $2,466,930.05 – $8,223,100.15 – $19,735,440.36 |
| Spouse of a Survivor | $4 - $6 million | | $1.5 million | $2,466,930.0 – $6,578,480.12 – $9,867,720.18 |
| Parent/Child of a Survivor | $2.5 million | | $1 million | $1,644,620.03 – $4,111,550.08 |
| Sibling of a Survivor | $1.25 million | | $500,000 | $822,310.02 – $2,055,775.04 |
| | | | | |

**Fatme Makki**

The testimony cited above demonstrates beyond a preponderance of evidence that Fatme suffered and continues to suffer compensable non-economic damages, which are permanent in

[81] Due to the U.S. Labor and Statistics calculator not being able to calculate inflationary adjustments for values over $10,000,000, I have utilized the Federal Reserve Bank of Minneapolis' website calculator found at **https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator**.

nature and will continue into the future. It is clear that during life, Fatme suffered compensable non-damages that the *Heiser* framework would set at $1,250,000.00. Given the inflationary effects since the *Heiser* matrix was set, I would value the non-economic damages recoverable to be $2,055,775.04.

**Leila Makki**

The testimony cited above demonstrates beyond a preponderance of evidence that Leila suffered and continues to suffer compensable non-economic damages, which are permanent in nature and will continue into the future. It is clear that during life, Leila suffered compensable non-damages that the *Heiser* framework would set at $1,250,000.00. Given the inflationary effects since the *Heiser* matrix was set, I would value the non-economic damages recoverable to be $2,055,775.04.

**Makie Makki**

The testimony cited above demonstrates beyond a preponderance of evidence that Makie suffered and continues to suffer compensable non-economic damages, which are permanent in nature and will continue into the future. It is clear that during life, Makie suffered compensable non-damages that the *Heiser* framework would set at $1,250,000.00. Given the inflationary effects since the *Heiser* matrix was set, I would value the non-economic damages recoverable to be $2,055,775.04.

**Malaki Makki**

The testimony cited above demonstrates beyond a preponderance of evidence that Malaki suffered and continues to suffer compensable non-economic damages, which are permanent in nature and will continue into the future. It is clear that during life, Malaki suffered compensable non-damages that the *Heiser* framework would set at $1,250,000.00. Given the inflationary effects

since the *Heiser* matrix was set, I would value the non-economic damages recoverable to be $2,055,775.04.

**Mariam Makki**

The testimony cited above demonstrates beyond a preponderance of evidence that Mariam suffered and continues to suffer compensable non-economic damages, which are permanent in nature and will continue into the future. It is clear that during life, Mariam suffered compensable non-damages that the *Heiser* framework would set at $1,250,000.00. Given the inflationary effects since the *Heiser* matrix was set, I would value the non-economic damages recoverable to be $2,055,775.04.

**Ali Makki**

The testimony cited above demonstrates beyond a preponderance of evidence that Ali suffered and continues to suffer compensable non-economic damages, which are permanent in nature and will continue into the future. It is clear that during life, Ali suffered compensable non-damages that the *Heiser* framework would set at $1,250,000.00. Given the inflationary effects since the *Heiser* matrix was set, I would value the non-economic damages recoverable to be $2,055,775.04.

## CONCLUSION

Upon consideration of the evidence and facts submitted and the aforementioned legal framework, the Special Master must consider whether the Plaintiffs are entitled to damages including compensatory damages for the pain and suffering s/he has endured, economic damages, loss of consortium damages, solatium damages, and punitive damages. There is evidence of the Plaintiffs having endured such damages from the point of injury to the present, and that will continue into the future on a permanent basis.

The Special master concludes as a matter of law that judgment should be entered as follows:

**Fatme Makki**

| | |
|---|---|
| Non-Economic Damages: | $2,055,755.04 |
| Punitive Damages: | $ 76,042.38 |
| **TOTAL:** | **$2,1312797.42** |

**Leila Makki**

| | |
|---|---|
| Non-Economic Damages: | $2,055,755.04 |
| Punitive Damages: | $ 76,042.38 |
| **TOTAL:** | **$2,1312797.42** |

**Makie Makki**

| | |
|---|---|
| Non-Economic Damages: | $2,055,755.04 |
| Punitive Damages: | $ 76,042.38 |
| **TOTAL:** | **$2,1312797.42** |

**Malaki Makki**

| | |
|---|---|
| Non-Economic Damages: | $2,055,755.04 |
| Punitive Damages: | $ 76,042.38 |
| **TOTAL:** | **$2,1312797.42** |

**Mariam Makki**

| | |
|---|---|
| Non-Economic Damages: | $2,055,755.04 |
| Punitive Damages: | $ 76,043.12 |
| **TOTAL:** | **$2,131,818.16** |

**Ali Makki**

| | |
|---|---|
| Non-Economic Damages: | $2,055,755.04 |
| Punitive Damages: | $ 76,042.38 |
| **TOTAL:** | **$2,1312797.42** |

In conclusion, based upon the evidence provided, the above-named Plaintiffs are entitled to judgments each in accordance with the "Total" identified above.

**July 8, 2026**
**Date**

**/s/Paul G. Griffin**
**Paul G. Griffin, Esq.**
**Special Master**